**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                             No. CR 03-0735 JB

RICHARD NAJAR,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress Evidence, filed March 12, 2004 (Doc. 15). The Court held an evidentiary hearing on this matter on June 22, 2004. The primary issue is whether the Court should suppress all evidence seized from the home of the Defendant, Richard Najar, on the basis that law enforcement officers entered his home in violation of the Fourth Amendment. Because the Court finds that the law enforcement officers in this case entered Najar's home without a warrant, and that none of the exceptions to the warrant requirement apply, the Court will grant Najar's motion and suppress the physical evidence seized from his home as a result of the officers' illegal entry.

## FACTUAL BACKGROUND

The facts of this case are largely undisputed. On November 25, 2002, the Roswell Police Department received a 911 call from a residence located at 308 S. Beech, Roswell, New Mexico. When the dispatch officer answered the call, the caller hung up. Pursuant to department policy, dispatch attempted to contact the residence to confirm whether police assistance was necessary. In response to the call from dispatch, someone at the residence picked up the telephone and immediately

hung up without speaking.  Dispatch called the residence three more times, each with the same result.

Because he was not able confirm that police assistance was unnecessary, the dispatch officer

requested that officers respond to the residence and investigate the reason for the original 911 call.

Officers Chris Brown and O. Leonard arrived at the residence, knocked on the door, and

announced that they were police officers.  Although no one answered the door, the officers heard

movement inside the house and saw the silhouette of a person through one of the windows.  Because

their continued attempts to make contact with anyone inside the residence were unsuccessful, the

officers contacted their supervisor, Sergeant Brown, and asked him to come to the scene.

Sergeant Brown came to the scene and joined the two officers in their attempts to contact

someone inside the house.  While knocking on the door and announcing that they were police

officers,  Sergeant Brown saw someone inside the house come toward the door, look outside, and

retreat to the east bedroom.  When the officers continued to knock on the front door, the occupant

of the house returned to the front door and then walked away again without opening the door.  A

short time later, the man came to the door and opened it.  The man who answered the door was

Najar.

When Najar opened the front door, the officers explained the reason for their presence and

requested entry into the house to check the welfare of anyone inside.  Initially, Najar did not allow

the officers to enter his home.  Najar told the officers that he did not place the 911 call and that he

was alone in the house.  The officers repeated that they needed to gain entry into the home to check

on anyone who might have made the 911 call.  Ultimately, Najar reluctantly allowed the officers into

his home.

Once inside, Sergeant Brown went immediately to the east bedroom where he had seen Najar

walk earlier.  He found a woman lying face down on the floor.  In response to his question, the woman said that she was alright.  Sergeant Brown noticed several needle injection marks on both of the woman's arms.

In the living room, Officer Brown noticed a shotgun up against the wall in the living room, partially concealed by a chair.  The officers took possession of the shotgun and found that it was loaded.  The officers read Najar his Miranda rights.  In response to a question, Najar stated that he loaded the gun earlier because of problems in his neighborhood.  Upon further questioning, the officers determined that it was likely that Najar had at least one felony conviction.  The officers seized the weapon and arrested Najar based on an outstanding Municipal Court warrant for failure to appear.

The police officers later obtained Najar's criminal history, which revealed two felony convictions: one for possession of cocaine and another for involuntary manslaughter with the use of a firearm.  On April 16, 2003, a federal grand jury indicted Najar for possession of a firearm by a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

## PROCEDURAL BACKGROUND

Najar moves pursuant to rule 12(b)(3) of the Federal Rules of Criminal Procedure, and requests that the Court find that the officers illegally entered his home and issue an Order suppressing from use at trial any physical evidence seized from his home, specifically a Mossberg, Model 835 Ultra-Mag, 12 gauge shotgun bearing serial number UM 273400.  The United States opposes this motion.  During the hearing on this motion, defense counsel asked the police officers numerous times whether they believed probable cause existed that a crime was being committed.  Each time, the

officers replied in the negative.  In response to the Assistant United States Attorney's question, Sergeant Brown testified that he was trying to determine whether a crime had been committed.  At the hearing, Officer Brown gave the following testimony regarding probable cause:

Q.  All right.  So at this time [is] there any evidence that any crime has been committed?

A.  No.

* * * *

Q.  When Sergeant Brown arrived you debriefed him on what was happening right?

A.  Correct.

Q.  You didn't say that there was a crime going on did you?

A.  No.

* * * *

Q.  When you look inside you see no evidence of a crime being committed inside do you?

A.  No.

* * * *

Q.  Now, when this individual opened the door . . . you said that you noticed the smell of intoxicants right?

A.  Yes.

Q.  A strong odor?

A.  Uh-huh (indicating yes).

Q.  Nothing wrong with being drunk inside your house is there?

A.  No.

Sergeant Brown gave the following testimony regarding probable cause:

Q.  No crime had been committed when you arrived?

A.  No, sir not that I knew of.

Q.  Okay your officers would have responded to a crime don't you think?

A.  Yes, sir.

Q.  When you showed up they would have said, "Hey Sarge, we've got a crime going on inside?

A.  Yes, sir.

Q.  They didn't do that in this case did they?

A.  No, sir.

* * * *

Q.  So there is no evidence of a crime going on inside is there?

A.  No, sir.

* * * *

Q.  You just want to go in and make sure that if he didn't somebody else might have made the 911 call?

A.  Right.

Q.  That's part of making a welfare check, right?

A.  Yes, sir.

* * * *

Q.  So that entire time there was nothing to say that a crime was being committed or that anybody inside was dangerous right?

A.  No, sir.

* * * *

Q.  You were also asked about whether a crime was being committed or had been committed,

you were asked a specific question was there any evidence that a crime had been committed.

[Y]ou said no there wasn't any evidence in your mind, were you trying to determine during

this investigation whether a crime was being committed?

A.  Yes, sir that's exactly what I was doing.

Transcript at 33:20-22; id. at 35:20-24; id. at 36:19-21; id. at 38:5-13; id. at 74:2-11; id. at 75:4-6;

id. at 79:1-5; id. at 83:2-5; id. at 84:16-22.

## LAW ON THE FOURTH AMENDMENT

The Supreme Court of the United States has stated that "'physical entry of the home is the

chief evil against which the wording of the Fourth Amendment is directed.'"  Payton v. New York,

445 U.S. 573, 585-86 (1980)(quoting United States v. United States District Court, 407 U.S. 297,

313 (1972)).  See United States v. Flowers, 336 F.3d 1222, 1226 (10th Cir. 2003).

> [T]he Second Circuit recently summarized its position: "To be arrested in the home
> involves not only the invasion attendant to all arrests but also an invasion of the
> sanctity of the home.  This is simply too substantial an invasion to allow without a
> warrant, at least in the absence of exigent circumstances, even when it is accomplished
> under statutory authority and when probable cause is clearly present." United States
> v. Reed, 572 F.2d 412, 423 (2d Cir. 1978), cert. denied, sub nom. Goldsmith v.
> United States, 439 U.S. 913 [(1978)].  We find this reasoning to be persuasive and
> in accord with this Court's Fourth Amendment decisions.

* * * *

The Fourth Amendment protects the individual's privacy in a variety of settings.  In
none is the zone of privacy more clearly defined than when bounded by the
unambiguous physical dimensions of an individual's home -- a zone that finds its roots
in clear and specific constitutional terms: "The right of the people to be secure in their
. . . houses . . . shall not be violated."  That language unequivocally establishes the
proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a

man to retreat into his own home and there be free from unreasonable governmental intrusion."  Silverman v. United States, 365 U.S. 505, 511 [(1961)].  In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

Payton v. New York, 445 U.S. at 588-90.

"Police violate the Fourth Amendment when they engage in a warrantless search and no exception to the warrant requirement applies."  United States v. Aquino, 836 F.2d 1268, 1271 n.3 (1988)(citing Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984)).  "'[T]he most basic constitutional rule' in the search and seizure area is that exceptions to the warrant requirement must be 'specifically established,' 'well delineated' and 'jealously and carefully drawn.'"  United States v. Aquino, 836 F.2d at 1270 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)).  "The notion that emergency circumstances may in appropriate cases make a warrantless search constitutional if probable cause exists is a clearly established exception to the warrant requirement." United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir. 1998)(emphasis added)(quoting United States v. Aquino, 836 F.2d at 1270-71).

When police seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists.  Because [i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable, this burden is especially heavy when police seek to enter a suspect's home[.]

United States v. Aquino, 836 F.2d at 1271 (internal quotation marks and citations omitted).

## LEGAL ANALYSIS

The United States does not contend that the officers had Najar's consent to enter his home.[1] Nor does it argue that probable cause existed to enter and search the home. Instead, the United States argues that exigent circumstances existed which were sufficient to allow the officers to conduct a warrantless search of Najar's home.

Najar argues that the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have not recognized exigent circumstances, standing alone, as an exception to the warrant requirement. Najar contends that Fourth Amendment law still requires probable cause. Because the Court, after reviewing precedent from both the Supreme Court and from the Tenth Circuit, believes that the exception applies to warrantless entries based upon probable cause plus exigent circumstances, it will grant Najar's motion to suppress.

---

[1] "'[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.'" United States v. Pena-Sarabia, 297 F.3d 983, 986 (10th Cir. 2002)(quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). In its response to the Defendant's motion, the United States stated that it did not concede that the officers entered Najar's home without his voluntary consent. The response brief, however, focused exclusively on exigent circumstances and did not argue the consent issue. At oral argument, the Court had the following exchange with the Assistant United States Attorney:

> THE COURT: "Mr. Martinez[,] you're not trying to come under . . . any sort of consent[,] you're trying to come under the exigent circumstances exception to the warrant requirement[,] correct[?]"

> MR. MARTINEZ: "Yes, your Honor."

Transcript of Motion Hearing at 90:19-23 (June 22, 2004)("Transcript")

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

I.      **SUPREME COURT AND TENTH CIRCUIT CASE LAW ESTABLISH THAT A WARRANTLESS ENTRY INTO A PRIVATE HOME MUST BE JUSTIFIED BY BOTH PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES.**

The United States relies completely upon the argument that exigent circumstances existed which allowed a warrantless entry of Najar's home.  The United States acknowledges that it carries the burden of proving that exigent circumstances existed.  See United States v. Anderson, 154 F.3d at 1233 (citing United States v. Wicks, 995 F.2d 964, 970 (10th Cir.1993)).  The Tenth Circuit has established a three-part test for determining whether exigent circumstances exist.

> [T]he basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir. 2003)(citations omitted).

Najar does not dispute that this is the appropriate test for determining the existence of exigent circumstances.  Najar disputes the United States' assertion, however, that exigent circumstances, in the absence of probable cause, are sufficient to overcome the warrant requirement.  Najar argues that, for this exception to justify a warrantless entry into a home, the police need both probable cause and exigent circumstances.

The Supreme Court has stated that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."  Kirk v. Louisiana, 536 U.S. 635, 638 (2002)(per curiam)(emphasis added)(citing Payton v. New York, 445 U.S. at 590).  In Kirk v. Louisiana, the Louisiana Court of Appeals found probable cause, but did not address exigent circumstances.  The Supreme Court agreed with the following statement written by a dissenting

justice on the Louisiana Supreme Court: "The Fourth Amendment to the United States constitution

has drawn a firm line at the entrance to the home, and thus, the police need <u>both</u> probable cause to

either arrest or search and exigent circumstances to justify a nonconsensual warrantless intrusion into

private premises."  <u>Id.</u> at 637 (emphasis added).  The Tenth Circuit has recognized this rule.  <u>See</u>

<u>United States v. Flowers</u>, 336 F.3d at 1227 ("As <u>Payton</u> and <u>Kirk</u> make plain, 'police officers need

either a warrant or probable cause *plus exigent circumstanes* in order to make a lawful entry into a

home.'")(emphasis added by <u>Flowers</u> court); <u>id.</u> at 1228 ("[H]e was within the privacy of his home,

the walls of which cannot be breached without an arrest or search warrant or probable cause,

combined with exigent circumstances, without violating the Fourth Amendment.")[2]; <u>United States</u>

<u>v. Davis</u>, 290 F.3d at 1242 ("A warrantless intrusion into a home may be justified by probable cause

for a search when the safety of law enforcement officers is threatened."); <u>Howard v. Dickerson</u>, 34

F.3d 978, 982 (10th Cir. 1994)("Probable cause accompanied by exigent circumstances will excuse

the absence of a warrant.")(citing <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 749 (1984))[3]; <u>United States v.</u>

<u>Aquino</u>, 836 F.2d at 1273-74 ("Our previous exigent circumstance cases have emphasized that the

police began the process of obtaining a warrant as soon as they had probable cause."); <u>id.</u> at 1270-71

("The notion that emergency circumstances may in appropriate cases make a warrantless search

constitutional  if  probable  cause  exists  is  a  clearly  established  exception  to  the  warrant

---

[2] In <u>United States v. Flowers</u>, the district judge ruled that the police officers had probable cause to arrest Flowers, but did not make subsidiary findings whether exigent circumstances were present. <u>See</u> 336 F.3d at 1225.

[3] In <u>Howard v. Dickerson</u>, the Tenth Circuit said the propriety of the arrest boiled down to two areas of inquiry: (i) the manner in which the officer effectuated the arrest; and (ii) the existence of probable cause to arrest. <u>See</u> 34 F.3d at 981. The Tenth Circuit said it did not need to reach the probable cause issue, because it resolved the other issue against the officer and the existence of probable cause would not overcome the illegal manner of executing the arrest. <u>See</u> <u>id.</u>

requirement.")(citing <u>Welsh v. Wisconsin</u>, 466 U.S. at 749-50).

The Court is aware that none of the cases cited above directly address the issue whether exigent circumstances, standing alone, are sufficient to qualify as an exception to the warrant requirement.  If their holdings are limited solely to their facts, then those cases may only support the proposition that probable cause, standing alone, is insufficient to overcome the warrant requirement. The Court believes, however, that the Supreme Court and the Tenth Circuit have decided several cases in which they draw a conceptual link between probable cause and exigent circumstances.

In <u>Welsh v. Wisconsin</u>, 466 U.S. 740, the Supreme Court stated that:

> We therefore conclude that the common-sense approach utilized by most lower courts is required by the Fourth Amendment prohibition on "unreasonable searches and seizures," and *hold that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made*. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed.

<u>Id.</u> at 753 (emphasis added)(citation omitted).  The Tenth Circuit has made similar statements: "Although the gravity of the crime cannot in itself create sufficient exigency for a warrantless search, independent exigent circumstances can justify Fourth Amendment intrusions when the police are investigating grave crimes even though similar circumstances would not justify warrantless intrusions for less serious offenses."  <u>United States v. Aquino</u>, 836 F.2d at 1271-72 (citations omitted).[4]  The United States has not directed the Court's attention to authority that supports the contention that the

---

[4] In <u>United States v. Aquino</u>, the Tenth Circuit affirmed an exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of a suspect, but made it clear that such entry must be "pursuant to clear evidence of probable cause . . . ."  836 at 1272.  <u>See id.</u> ("Accordingly, the test in this circuit requires probable cause and exigent circumstances."); <u>id.</u> at 1273 (finding probable cause).

-11-

Supreme Court or the Tenth Circuit intended the exigent circumstances exception to exist separately from the requirement of probable cause.

Even in cases where the Tenth Circuit has not specifically relied upon its earlier statement that a warrantless entry requires both probable cause and exigent circumstances, probable cause appeared to be present. Indeed, in United States v. Rhiger, the case the United States relies upon to support its exigent circumstances argument, the police were investigating a home that they knew contained an active methamphetamine laboratory. See United States v. Rhiger, 315 F.3d at 1288 ("The government presented evidence indicating the federal agents had reasonable grounds to believe there was an immediate need to protect themselves and the public from the potential explosion of the methamphetamine lab in Mr. Brown's home."). Cf. United States v. Davis, 290 F.3d at 1242 n.4 ("When the police in this case entered Mr. Davis' home no one was under arrest, and at that time, there was no probable cause to arrest anyone.").

The same is true of a recent Tenth Circuit decision. The Tenth Circuit, in an opinion that Judge Ebel authored, affirmed a district court's denial of a motion to suppress, finding that exigent circumstances justified a warrantless entry into an apartment. See United States v. Thomas, ___ F.3d ___, 2004 WL 1368805 at *4 (10th Cir. June 18, 2004)(" Under the circumstances of this case, we are satisfied that the officers had reasonable grounds to believe there was an immediate need to ensure their safety and the safety of others by guaranteeing that no one remained in the apartment. . . . There was probable cause to believe that Thomas had used the gun to commit one or more state law offenses during the preceding argument . . . ."). Thus, in the absence of authority to the contrary, the Court does not feel free to ignore the Supreme Court's and Tenth Circuit's repeated statements that "police officers need either a warrant or probable cause plus exigent circumstances in order to

-12-

make a lawful entry into a home."  Kirk v. Louisiana, 546 U.S. at 638 (emphasis added); United

States v. Flowers, 336 F.3d at 1226 (same).

The Court also notes that the Tenth Circuit appears to have declined on two occasions the

opportunity to expand the exigent circumstances doctrine.  See, e.g., United States v. Davis, 290 F.3d

at 1244 ("Essentially, the government asks for a special rule for domestic calls because they are

inherently violent, and the police, responding to these calls, are automatically at greater risk.  We do

not believe this case justifies a venture into that new territory."); United States v. Bute, 43 F.3d 531,

535 (1994)("We agree with this line of authority holding the community caretaking exception to the

warrant requirement is applicable only in cases involving automobile searches."); id. at 537 ("[W]e

decline to adopt the security check exception advanced by the government.").  Although United

States v. Bute involved a commercial building, rather than a private residence, the Tenth Circuit cited

with approval and agreed with authority from the Seventh Circuit that the Supreme Court did not

intend the community caretaking doctrine to apply to private homes or businesses.  See United State

v. Bute, 43 F.3d at 535 (quoting United States v. Pichany, 687 F.2d 204, 209 (7th Cir. 1982)).

## II.   THE POLICE OFFICERS DID NOT HAVE PROBABLE CAUSE TO ENTER NAJAR'S HOME.

The language of the governing case law supports Najar's argument that the police officers

violated the Fourth Amendment if they entered his home without probable cause to believe a crime

was being committed.  In its response to Najar's motion, the United States did not argue that the

police officers had probable cause for the entry, but relied solely upon exigent circumstances.  At the

hearing on this motion, the United States did not argue that the officers had probable cause to enter

Najar's home.  Furthermore, the United States did not introduce evidence or testimony upon which

-13-

the Court could rely in making an independent determination that probable cause existed.

In the absence of any argument or evidence to support a finding of probable cause, the Court finds that the police officers did not have probable cause to enter Najar's home.  Accordingly, the Court will grant the Defendant's Motion to Suppress Evidence.[5]

**IT IS ORDERED** that the Defendant's Motion to Suppress Evidence is granted.  The Court will suppress all physical evidence that law enforcement officers seized from the Defendant's home.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

David C. Iglesias
    United States Attorney
    District of New Mexico
Albuquerque, New Mexico

-and-

Damon P. Martinez
    Assistant United States Attorney
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

---

[5] At the oral argument, the Court indicated that the United States had shown the three elements of the Rhiger test.  See Transcript at 100:1 to 103:2.  Given, however, that the Court has decided that there was no probable cause, the Court need not decide whether the United States has shown the presence of the three Rhiger elements.

-14-

Dennis J. Candelaria
  Assistant Federal Public Defender
Las Cruces, New Mexico

   *Attorney for the Defendant*