**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 03-0735 JB

RICHARD NAJAR,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Motion to Reconsider District Court's Memorandum Opinion and Order filed July 6, 2004, filed July 13, 2004 (Doc. 33).  The Court held a hearing on this motion on July 29, 2004.  The primary issue is whether the exigent circumstances exception to the warrant requirement for entry into a home always requires probable cause that a crime has been committed or is in progress.  Because the United States has provided the Court with authority in support of its position that the probable cause element of the exigent circumstances exception can be satisfied or eliminated when law enforcement reasonably believes that a person is in danger, the Court will grant the United States' motion to reconsider and deny the Defendant's motion to suppress.

**PROCEDURAL BACKGROUND**

For the most part, both the United States and the Defendant, Richard Najar, accept the facts that the Court outlined in its earlier Memorandum Opinion and Order under "Factual Background." Memorandum Opinion and Order at 1-3, filed July 6, 2004 (Doc. 31).  In its Memorandum Opinion and Order, the Court found that the Roswell Police Department dispatch officer received a 911 call

and hang-up. <u>See</u> <u>id.</u> at 1.  The dispatcher called the residence back four times, and each time, someone picked up the telephone and immediately hung up the telephone without speaking.  <u>See</u> <u>id.</u> at 1-2.

Upon their arrival, officers Brown and Leonard knocked on the door and announced that they were police officers.  <u>See</u> <u>id.</u> at 2.  Although no one answered the door, the officers heard movement inside the trailer.  <u>See</u> <u>id.</u>  The officers also saw a silhouette of a person through a window.  <u>See</u> <u>id.</u> Because the two officers were unable to make contact with anyone inside the trailer, they contacted their supervisor, Sergeant Brown, and asked him to come to the scene.  <u>See</u> <u>id.</u>

Sergeant Brown arrived at the scene and began trying to make contact with someone inside the trailer.  <u>See</u> <u>id.</u>  While knocking on the door, Sergeant Brown saw Najar, through the window, go from the east bedroom to the door, look outside, and then return to the east bedroom.  <u>See</u> <u>id.</u> Sergeant Brown then saw Najar again enter the main room from the east room.  <u>See</u> <u>id.</u>  And while the Court did not note this fact in the Factual Background section of its Memorandum Opinion and Order, at this point, Sergeant Brown instructed Najar to open the door.

When Sergeant Brown entered the trailer, he did not know what situation he faced.  For this reason, he entered the trailer and proceeded to the east bedroom to investigate whether a criminal or medical emergency existed.  Although he found a female lying face down on the floor, she did not need medical attention.

On July 6, 2004, the Court granted the Defendant's Motion to Suppress Evidence.  <u>See</u> Memorandum Opinion and Order at 14.  The Court found that the law enforcement officers did not have probable cause to enter Defendant Richard Najar's home.  <u>See</u> <u>id.</u> at 13-14.  In its motion to reconsider, the United States acknowledges that it did not argue in either its Response to the

Defendant's Motion to Suppress or at the hearing that the law enforcement officers had probable cause to enter Najar's residence.  The United States disagrees, however, with the Court's statement that "the United States did not introduce evidence or testimony upon which the Court could rely in making an independent determination that probable cause existed."  Id.

Upon reviewing the Court's Memorandum Opinion and Order, and after conducting further research, the United States relies upon a case from the United States Court of Appeals for the Eleventh Circuit which it contends provides guidance in this matter.  The United States asks the Court to reconsider its ruling after considering the additional case law it presents in its motion.  The United States urges the Court to find that the probable cause requirement was satisfied in this case, thereby justifying the officers' entry into Najar's home.  In support of its motion, the United States argues that the probable cause requirement differs in emergency and criminal situations.

## ANALYSIS

In its Memorandum Opinion and Order, which granted the Defendant's motion to suppress, the Court relied upon cases requiring both probable cause and exigent circumstances.  The Court concluded that the United States had not satisfied the probable cause requirement because the officers testified that they did not have probable cause that a crime had occurred or was in progress.  After reviewing the authority that the United States cites in its motion to reconsider, the Court believes that the Supreme Court of the United States has eliminated the probable cause requirement or applied a less rigorous probable cause requirement when law enforcement reasonably believes that a person within the residence is in need of immediate aid and there are emergency circumstances.  In cases involving emergency situations, the Supreme Court has not required probable cause of criminal activity, but only a reasonable belief that a person within the residence is in need of immediate aid.

Because the Court believes that the United States has satisfied the standards that apply to warrantless entries under emergency circumstances, the Court will reconsider its ruling on the Defendant's motion to suppress evidence.

**I.      THE COURT BELIEVES THAT IT CAN RECONCILE THE SUPREME COURT PRECEDENT ON THIS ISSUE.**

There are different ways to reconcile what the appellate courts have said and what they have done.  First, the Court could say, as it did in its original opinion, that the Supreme Court and the Tenth Circuit have said the exigent circumstances exception requires both probable cause that a crime has been or is being committed, and exigent circumstances.  Second, the Court could say that "probable cause" does not mean probable cause of a crime, but something else when there are exigent circumstances.  Third, the Court could say the Supreme Court has dropped the probable cause requirement in certain circumstances.  The Court will examine each possibility.

**A.      DOES THE EXIGENT CIRCUMSTANCES REQUIREMENT ALWAYS REQUIRE PROBABLE CAUSE THAT A CRIME HAS BEEN COMMITTED OR IS IN PROGRESS?**

One possible solution would be to say that the exigent circumstances exception requires probable cause, and that probable cause means probable cause that a crime has been committed or is in progress.  While that solution may be consistent with the Supreme Court's language in Kirk v. Louisiana, 536 U.S. 635 (2002), and Payton v. New York, 445 U.S. 573 (1980), it does not coincide with the holding, language, and facts of other cases.  For example, in Michigan v. Tyler, 436 U.S. 499, 509 (1978), the Supreme Court indicated that the state did not need a warrant when there is a fire.  In Mincey v. Arizona, 437 U.S. 385, 392-93 (1978), decided the same year as Michigan v. Tyler, the Supreme Court stated that there were situations where the need to protect or preserve life,

-4-

or to avoid serious injury, justified a warrantless entry and/or search.  In neither case did the Supreme Court discuss probable cause or what it means.

From a policy standpoint, it appears that the Supreme Court does not want to discourage police from responding to emergency situations.  Whether it is a fire, a 911 call, a scream, or something that they see, the Supreme Court does not want to require police to do anything but respond to the emergency.  The Supreme Court does not appear to want police to delay or to walk away while life is in danger.

It appears that, in those circumstances, the Supreme Court has not always adhered to the strict requirement that law enforcement have both probable cause and exigent circumstances.

The opinion that the Court entered on July 6, 2004 may have been too narrow in that it focused exclusively on cases requiring probable cause.  In light of the Supreme Court's statements indicating that probable cause is not always necessary before law enforcement enter a home, the Court feels compelled to at least consider other alternatives.  The Court will consider whether probable cause means something different in emergency situations or whether a different standard applies in cases involving purely emergency circumstances.

## B.   DOES PROBABLE CAUSE MEAN SOMETHING ELSE WHEN EMERGENCY CIRCUMSTANCES EXISTS?

The Eleventh Circuit has dealt with the tension between the Supreme Court's statements regarding probable cause in exigent circumstances cases and its decisions in cases involving emergency situations.  See United States v. Holloway, 290 F.3d 1331 (11th Cir. 2002).  The Eleventh Circuit retained the probable cause requirement in emergency situations, but held that an officer's reasonable belief that a person is in danger satisfies the probable cause requirement.  See id. at 1338.

In <u>United States v. Holloway</u>, an officer received a dispatch from a 911 operator to investigate an anonymous report of gunshots and arguing at a particular residence.  <u>See</u> <u>id.</u> at 1332.  An officer proceeded to the residence after the police department received the 911 call.  <u>See</u> <u>id.</u>  En route, the officer received a second dispatch from the 911 operator indicating the caller was reporting continued gunshots and arguing.  <u>See</u> <u>id.</u>

Upon arrival at the residence, officers saw the defendant and his wife on the porch of their home.  <u>See</u> <u>id.</u>  Because of the high-risk nature of the 911 call, one of the officers drew his weapon and secured the residence and individuals at the listed address.  <u>See</u> <u>id.</u> at 1332-33.  When he stepped onto the porch, the officer saw a shotgun shell on top of the picnic table and  a model 870 Remington shotgun leaning against the side of the mobile home, approximately three feet from where the defendant had been standing when the officers first arrived.  <u>See</u> <u>id.</u> at 1333.  Three additional shotgun shells, two expended and one live, were found lying in the grass by the side of the mobile home. <u>See</u> <u>id.</u>

The issue that the Eleventh Circuit decided in <u>United States v. Holloway</u> was "whether law enforcement officials may conduct a warrantless search of a private residence in response to an emergency situation reported by an anonymous 911 caller."  <u>Id.</u> at 1334.  The Eleventh Circuit held that, "when exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home.  Once in the home, officers may seize any evidence found within plain view." <u>Id.</u>  Like the Court's earlier Memorandum Opinion and Order in this case, the Eleventh Circuit in <u>United States v. Holloway</u> also stated that, "[i]n validating a warrantless search based on the existence of an emergency, as with any other situation falling within the exigent circumstances

exception, the Government must demonstrate both exigency and probable cause." Id. at 1337.

> In the typical case, probable cause exists where the circumstances would lead a
> reasonable person to believe a search will disclose evidence of a crime. United States
> v. Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983). In emergencies, however, law
> enforcement officers are not motivated by an expectation of seizing evidence of a
> crime. Rather, the officers are compelled to search by a desire to locate victims and
> the need to ensure their own safety and that of the public. See generally Note, The
> Emergency Doctrine, Civil Search and Seizure, and the Fourth Amendment, 43
> Fordham L.Rev. 571, 582 (1975)("Generally it is not difficult to determine when the
> emergency doctrine is being applied. The police usually are acting to help a person
> in distress, not to find evidence of criminal acts."). Thus, in an emergency, the
> probable cause element may be satisfied where officers reasonably believe a person
> is in danger. See Koch v. Town of Brattleboro, 287 F.3d 162 (2d Cir. 2002)(stating
> probable cause for forced entry in response to exigent circumstances requires
> probability a person is in danger); Tierney v. Davidson, 133 F.3d 189, 196-97 (2d Cir.
> 1998) (holding police officers may enter dwelling without warrant if, based on
> objective standard, they reasonably believe individual is in distress); Root v. Gauper,
> 438 F.2d 361, 364-65 (8th Cir.1971) (holding warrantless search based on emergency
> requires assessment of whether officers reasonably believe such action is necessary).

United States v. Holloway, 290 F.3d at 1337-38. Thus, although the Eleventh Circuit expressly

retained the probable cause requirement, it did not require probable cause of a crime; it held that the

officers' reasonable belief that a person was in danger satisfied the probable cause requirement.

While the Court recognizes that the Eleventh Circuit's approach is one method of analysis,

it does not adopt the same reasoning. Probable cause has a particular meaning in the law, and it

means probable cause that a crime has been committed or is in progress. To give probable cause

different legal meanings in different contexts could cause confusion for law enforcement and the

courts. Thus, the Court is not inclined to define probable cause differently when there is an

emergency. Because Supreme Court precedent supports the conclusion that probable cause is not

always necessary to justify entry into a home during an emergency situation, the Court will consider

what the appropriate standard is in such cases.

## C.    HAS THE SUPREME COURT ELIMINATED THE PROBABLE CAUSE REQUIREMENT IN EMERGENCY SITUATIONS?

While the Supreme Court and the United States Court of Appeals for the Tenth Circuit have -

- as the Court set forth in its July 6, 2004 Memorandum Opinion and Order - - repeatedly stated that

the exigent circumstances exception requires both probable cause and exigent circumstances, the

Supreme Court has, as a practical matter, not always required probable cause that a crime has been

committed or is in progress.  The Supreme Court has recognized the right of police officers to make

warrantless entries into private homes in response to emergency situations without mentioning

probable cause of a crime.  See Mincey v. Arizona, 437 U.S. at 392-93.

> We do not question the right of the police to respond to emergency situations. Numerous state  and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.  Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.  And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

Id. at 392-93 (footnotes omitted)(internal quotation marks and citations omitted)(emphasis added).

"Our decisions have recognized that a warrantless entry by criminal law enforcement officials may

be legal when there is compelling need for official action and no time to secure a warrant." Michigan

v. Tyler, 436 U.S. at 509 (finding that "[a] burning building clearly presents an exigency of sufficient

proportions to render a warrantless entry 'reasonable.'").  Once legitimately inside a home in response

to an emergency, officers may seize evidence that is in plain view.  See Mincey v. Arizona, 437 U.S.

at 393 ("And the police may seize any evidence that is in plain view during the course of their

legitimate emergency activities.")(citing Michigan v. Tyler, 436 U.S. at 509-10; Coolidge v. New

-8-

Hampshire, 403 U.S. 443, 465-66 (1971)).

There is Supreme Court precedent to support the United States' position that emergency circumstances which endanger a person's life or safety, standing alone, may justify a warrantless entry into a home. The Eleventh Circuit has effectively recognized the same principle, although it equated a certain emergency - - not all emergencies - - with probable cause. If the circumstances in the case lead the officers to "reasonably believe that a person within [the residence is] in need of immediate aid," then the Mincey standard is satisfied. Mincey v. Arizona, 437 U.S. at 392. Because the United States Court of Appeals for the Tenth Circuit has articulated three factors that are necessary to establish exigent circumstances, the Court also believes that the United States must satisfy those standards to prevail on its motion to reconsider. See United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir. 2003).

> We have determined the basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

Id.

The Court has some concern that the United States' position drops probable cause entirely from the exigent circumstances exception and requires police only to show exigent circumstances. But the exception at issue in this case will apply only in rare circumstances, and even then showing the Rhiger elements will be a necessary but not sufficient condition. Not all emergencies satisfy the Mincey standard. For example, protection of people on the outside of the residence or protection of property only may not suffice. Those may satisfy the Rhiger exigent circumstances test, but unless

-9-

there is also probable cause in the usual sense, they will not suffice to justify a warrantless entry into a home.  Only when there is immediate need to assist someone in the residence, and to protect or preserve life or avoid serious injury, and the <u>Rhiger</u> elements are satisfied will probable cause in the usual sense not be necessary.

It appears that the Supreme Court has eliminated the probable cause requirement in certain very limited situations.  There seem to be three conditions: (i) if the police reasonably believe that a person within the residence is in need of immediate aid and entry is needed to protect or to preserve life, or to avoid serious injury; (ii) the police are responding to an emergency, not a crime; and (iii) there are emergency circumstances.  When the police are responding to a crime, they need probable cause in the usual sense.  When they are responding to an emergency but the situation is not life-threatening, they still may need probable cause in the usual sense.  For probable cause in the usual sense not to be needed, the police must be responding to a true emergency rather than a crime, <u>and</u> the police must reasonably believe a person inside needs immediate assistance, and entry is needed to protect or preserve life, or to avoid serious injury.

## II.  THE COURT'S APPROACH IS CONSISTENT WITH TENTH CIRCUIT <u>PRECEDENT.</u>

When the Court prepared the July 6, 2004 Memorandum Opinion and Order, it was easy for the Court to find cases that said there needed to be probable cause and exigent circumstances when the district court only found probable cause.  <u>See</u> <u>Kirk v. Louisiana</u>, 536 U.S. at 638; <u>Payton v. New York</u>, 445 U.S. at 590; <u>United States v. Flowers</u>, 336 F.3d 1222, 1226 (10th Cir. 2003); <u>United States v. Davis</u>, 290 F.3d 1239, 1242 (10th Cir. 2002); <u>Howard v. Dickerson</u>, 34 F.3d 978, 982 (10th Cir. 1994); <u>United States v. Aquino</u>, 836 F.2d 1268, 1271 (1988).  It was more difficult to find cases

that said probable was needed when there were exigent circumstances.  Indeed, in its opinion, the Court stated that "[t]he Court is aware that none of the cases cited above directly address the issue whether exigent circumstances, standing alone, are sufficient to qualify as an exception to the warrant requirement.  If their holdings are limited solely to their facts, then those cases may only support the proposition that probable cause, standing alone, is insufficient to overcome the warrant requirement."  July 6, 2004 Memorandum Opinion and Order at 11.

Despite this acknowledgment, the Court reached the conclusion that the exigent circumstances exception required both probable and exigent circumstances.  One reason for that decision was that, although some cases discussed exigent circumstances without discussion or mention of probable cause, the facts of those cases indicated that probable cause in fact existed.  Indeed, in Rhiger, the case which sets forth the requirements for the exigent cause exception, the Tenth Circuit did not mention probable cause.  See United States v. Rhiger, 315 F.3d at 1288 ("The government presented evidence indicating the federal agents had reasonable grounds to believe there was an immediate need to protect themselves and the public from the potential explosion of the methamphetamine lab in Mr. Brown's home.").  The facts of Rhiger, however, which included an active methamphetamine lab, could satisfy probable cause of criminal activity.

The Court could reach the same conclusion with the Eleventh Circuit's opinion in Holloway v. United States.  Gunshots and shells could arguably satisfy probable cause.  Also, the Eleventh Circuit could have perhaps done something with the fact that the gun and shells were outside the home.  But the Eleventh Circuit did not take those routes.  Instead, it acknowledged that probable cause was necessary and stated how that element was satisfied.

Here, the Tenth Circuit's cases that do not mention probable cause may be doing the same

-11-

without saying so expressly.  And there is no inconsistency between the result or analysis here and in United States v. Davis, 290 F.3d 1239 (10th Cir. 2002), and United States v. Bute, 43 F.3d 531 (10th Cir. 1994).  In Davis, the Tenth Circuit rejected the United States' argument that there should be a special rule for domestic violence situations because they are inherently violent.  See United States v. Davis, 290 F.3d at 1244 ("Essentially, the government asks for a special rule for domestic calls because they are inherently violent, and the police, responding to these calls, are automatically at greater risk.  We do not believe this case justifies a venture into that new territory.").  The Tenth Circuit also noted that the officers could have checked on the suspected victim's condition without entering the home because she was standing at the door resisting their efforts to enter.  See id. at 1243.  In this case, the officers could not have checked on the suspected victim without entering Najar's home.  And the Court is not creating a general exception to the warrant requirement for domestic abuse cases.  Law enforcement officers must still satisfy the rigorous Mincey and Rhiger requirements.

The Court's decision is also consistent with United States v. Bute.  In Bute, law enforcement officers entered a commercial building without a warrant because they saw a large garage door standing open during the night.  See id. at 533.  The Tenth Circuit held that the officers' warrantless entry into the building violated the Fourth Amendment because no exception to the warrant requirement existed.  The Tenth Circuit declined to apply the community caretaking exception or the security check exception.  See id. at 535 ("We agree with this line of authority holding the community caretaking exception to the warrant requirement is applicable only in cases involving automobile searches."); id. at 537 ("[W]e decline to adopt the security check exception advanced by the government.").  In this case, the Court is not applying either of these exceptions, but rather a

combination of the standards in <u>Mincey</u> and <u>Rhiger</u>.  Moreover, in <u>Bute</u>, the officers entered the building unsolicited.  In this case, police received a call from Najar's residence.  Although the speaker was silent, the call acted as a summons to police.  Once they arrived at the scene, they had a duty to investigate.  The Court must, therefore, consider whether the requirements in <u>Mincey</u> and <u>Rhiger</u> are met, in which case the warrantless entry was justified.

**III.    APPLICATION OF THE "*MINCEY* PLUS *RHIGER*" STANDARD TO THE FACTS OF THIS CASE INDICATES THAT THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS.**

The Court finds that the circumstances of this case satisfy both the <u>Mincey</u> standard and the <u>Rhiger</u> standard.  The Roswell police department received a 911 call which resulted in a hang-up. Four attempts to contact someone at the residence were unsuccessful.  Each time, someone would pick up the phone and then hang it up without speaking.  Although Najar elicited testimony from the officers at the suppression hearing that the police receive many mistaken or inadvertent 911 calls, <u>see</u> Transcript of Motion Hearing at 7:16 to 8:1 (June 22, 2004), the Court does not believe that this fact justifies an assumption that a particular 911 call is not legitimate.  The 911 call justified the police officers' going to the residence to investigate the reason for the original call and the subsequent hang-ups.

Upon arriving at the residence, the officers saw and heard movement within the trailer, including Najar moving repeatedly into the east bedroom, but Najar would not answer the door in response to their repeated knocks.  When Najar finally did open the door, he said he was alone in the trailer and denied making the 911 call.  At that point, the officers had a reasonable basis for the belief that another person was inside the home and was in need of immediate aid, and that entry into the home was necessary to protect or preserve life, or to avoid serious injury.  Importantly, the officers

had this reasonable belief before they entered the home.  Thus, the <u>Mincey</u> standard, as well as the first of the three <u>Rhiger</u> factors is satisfied.

The Court believes that the second and third <u>Rhiger</u> factors are also satisfied in this case. There is no evidence that the search was motivated by an intent to arrest or seize evidence.  The officers went to Najar's home because the dispatch officer received a 911 call and could not confirm whether police assistance was needed because someone repeatedly answered the phone and immediately hung it up.  Moreover, when the officers entered the home, they went immediately to the east bedroom, where they had seen Najar come from and return to multiple times.  They found the gun in plain view, without any search whatsoever.  Finally, because of Najar's movement to and from the east bedroom, the officers also had a reasonable basis to associate that bedroom with an emergency situation.  Thus, based upon the totality of the circumstances confronting the officers, the Court finds that the United States has satisfied the standards set forth by the Supreme Court and the Tenth Circuit regarding warrantless entries based upon emergency circumstances.  Accordingly, the Court will grant the United States' motion to reconsider and deny the Defendant's motion to suppress.

**IT IS ORDERED** that the United States' Motion to Reconsider District Court's Memorandum Opinion and Order Filed July 6, 2004 is granted.  The Court has reconsidered its decision and believes that its ruling to suppress the evidence was incorrect.  Accordingly, the Court will deny the Defendant's Motion to Suppress Evidence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David C. Iglesias
  United States Attorney for the
   District of New Mexico
Damon P. Martinez
  Assistant United States Attorney
Las Cruces, New Mexico

     *Attorneys for the Plaintiff*


Dennis J. Candelaria
  Assistant Federal Public Defender
Las Cruces, New Mexico

     *Attorney for the Defendant*

-15-